UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TATIANA AALIYAH SPELLMAN,

                                         Plaintiff,          Case # 18-CV-0364-FPG

v.                                                            DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                           Defendant.
_____

**INTRODUCTION**

On May 28, 2014, Plaintiff Tatiana Aaliyah Spellman protectively applied for Supplemental Security Income under Title XVI of the Social Security Act. Tr.[1] 131-37. After the Social Security Administration ("SSA") denied her claim, Spellman testified at a hearing before Administrative Law Judge Mark Solomon ("the ALJ"). Tr. 33-60. On January 12, 2017, the ALJ issued an unfavorable decision. Tr. 15-26. After the Appeals Council denied her request for review, Spellman appealed to this Court.[2] Tr. 2-6; ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 7, 15. For the reasons that follow, Spellman's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED for further administrative proceedings.

**LEGAL STANDARD**

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 6.

[2] The Court has jurisdiction over this action under 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3).

1

substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g) and § 1383(c)(3)) (other citation omitted).

The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

## DISCUSSION

Spellman argues, among other things, that the Court should remand this case because the ALJ improperly evaluated the opinion of her treating physician, Bertholet Desir, M.D. ECF No. 8 at 17-22. Specifically, Spellman asserts that the ALJ erred by rejecting portions of Dr. Desir's opinion without providing good reasons for doing so. The Court agrees that remand is required.

An ALJ must give a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may discount a treating physician's opinion if it does not meet this standard, but he must "comprehensively set forth [his] reasons" for doing so. *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2) (the SSA "will always give good reasons" for the weight afforded to a treating source's opinion).

When a treating physician's opinion is not given controlling weight, an ALJ considers the following factors to determine how much weight it should receive: (1) whether the source examined the claimant; (2) the length, nature, and extent of the treatment relationship; (3) whether

the source presented relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether a specialist rendered the opinion in his or her area of expertise; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6); 20 C.F.R. § 416.927(c)(1)-(6).

The ALJ determined that Spellman retained the residual functional capacity ("RFC")[3] to perform a full range of work at all exertional levels but would be limited to "simple, repetitive, rote work" that "requires only occasional close, interpersonal contact with supervisors and co-workers." Tr. 19.

This is in stark contrast to Dr. Desir's September 14, 2016 assessment of Spellman's abilities. Dr. Desir opined that Spellman would have moderate limitations[4] in her ability to: carry out detailed instructions, maintain attention and concentration for extended periods, and perform activities with a schedule. Tr. 357. Dr. Desir also opined that Spellman would have marked limitations[5] in her ability to: interact appropriately with the public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism, get along with coworkers or peers, and maintain socially appropriate behavior. Tr. 357. He also determined that Spellman would likely be absent from work "[m]ore than three times per month." Tr. 358.

The ALJ acknowledged Dr. Desir's assessment but afforded it "little weight" because "treatment notes and the claimant's own descriptions of her activities of daily living show greater ability to function." Tr. 24. Specifically, the ALJ found that Dr. Desir's opinion was "not

---

[3] A claimant's RFC reflects his ability to perform physical or mental work activities on a sustained basis despite his impairments. 20 C.F.R. § 404.1520(e)-(f); 20 C.F.R. § 416.920(e)-(f).

[4] For purposes of the opinion, "moderate" limitations were defined as occasionally interfering with ability (up to 1/3 of an 8-hour workday).

[5] For purposes of the opinion, "marked" limitations—the highest level of restriction—were defined as constantly interfering with ability more than 2/3 of an 8-hour workday).

3

supported by substantial evidence as his own treatment notes totally contradict these findings, with normal examinations throughout." Tr. 24. The ALJ also noted that Spellman "did work for several months after this opinion was given." Tr. 24. Not only are these reasons insufficiently "good," they are also demonstrably false. *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) ("The failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.") (quoting another source).

First, Dr. Desir's own treatment notes do *not* contradict Dr. Desir's opinion. Although it is true that in 2014 Dr. Desir found Spellman to have good concentration, insight, and judgment (Tr. 244-47), such characteristics are not inconsistent with Dr. Desir's opinion two years later that Spellman would have significant difficulties working with other people. In that same 2014 treatment note, Dr. Desir diagnosed Spellman with major depression and prescribed her an anti-depressant. Tr. 245. Moreover, Dr. Desir's treatment notes over the course of his two-year doctor-patient relationship with Spellman actually demonstrate that Spellman has a long history of mental health rendering her unable to work. Tr. 343-46. The record reveals that Spellman is transgender, was diagnosed with HIV, and underwent sex-reassignment surgery. *See* Tr. 391-95, 458. In June 2014, Dr. Desir noted that Spellman fought repeatedly while in school and suffered from depression and PTSD. Tr. 351. That same month, Dr. Desir indicated that Spellman was anti-social and stays in her home due to her depression. Tr. 353. In the autumn of 2014, Dr. Desir again explained that Spellman was bipolar with recurrent mood swings and that she was considering "castration." Tr. 343-46, 348. She continued to present with bipolar and depression-related issues into 2016 and reported taking anti-depressants. Tr. 458-59. These treatment notes are consistent—or at the very least not inconsistent—with Dr. Desir's opinion that Spellman would have significant limitations in her social interactions.

Nor is Dr. Desir's opinion inconsistent with Spellman's own descriptions of her daily activities. Spellman did indicate at various times that she could cook, clean, shop, groom herself, and manage money. Tr. 187-88, 190, 287, 291, 305, 314. But in those records, Spellman also admitted "I sleep because of my depression," Tr. 187, and that she has no friends, Tr. 305. That Spellman could perform routine household chores has no bearing on whether she had the social functioning to interact with others in a workplace, as Dr. Desir noted. Moreover, Spellman's testimony—which the ALJ found to be not credible[6]—demonstrates that Spellman does not leave the house unless necessary and that she typically spends all day in bed. Tr. 38-43. When asked if she could be around people, Spellman indicated that she could not and that, in her words, "[t]he last time I went outside, I got into a fight, and I got locked up." Tr. 42. This testimony is therefore in line with Dr. Desir's opinion that Spellman would have great difficulty interacting with others.

The ALJ's final proffered reason for discounting Dr. Desir's opinion—that Spellman "did work for several months after this opinion was given"—is not supported by the record. Tr. 24. While the record demonstrates that Spellman did work for a brief time in the summer of 2016, that was *before* Dr. Desir rendered his opinion. Tr. 49. Indeed, Dr. Desir rendered his opinion several *days before* the ALJ held the hearing, making it impossible for Spellman to have worked for *months after* Dr. Desir's opinion. In any event, Spellman's own testimony regarding her employment supports—rather than contradicts—Dr. Desir's opinion. Spellman testified that she felt a tremendous amount of stress when "people start looking at you funny," and she indicated that when people found out she was "transsexual[] they act funny, they act different, and . . . I can't handle that." Tr. 49.

---

[6] Spellman also claims that the ALJ failed to properly evaluate her credibility. Because the Court determines remand is required on the treating physician issue, it will not reach Spellman's other arguments.

Importantly, the ALJ also discounted the opinions of the two consultative evaluators, Johania McCormick, Ph.D and Ashley Dolan, Psy. D., both of which were largely consistent with Dr. Desir's opinion. For example, Dr. McCormick opined that Spellman would have mild limitations in maintaining attention and making decisions, moderate to marked limitations in maintaining a schedule and relating with others, and marked impairments in performing complex tasks and in dealing with stress. Tr. 285-88. The ALJ gave this opinion "little weight." Tr. 21. Similarly, Dr. Dolan opined that Spellman would have mild limitations in interacting with the public, supervisors, and co-workers, but would have moderate limitations in responding appropriately to work situations and changes in a routine schedule. Tr. 303-10. The ALJ gave this opinion "partial weight" because it "is based on a one-time examination and a finding of moderate limitations implies some limitations which are 'severe.'" Tr. 23-24. In other words, because the opinions suggested significant impairments—consistent with Dr. Desir's opinion—they too were devalued.

The ALJ, therefore, did not assign significant weight to *any* mental health opinion evidence, despite the record being replete with opinions—from treating sources and consultative evaluators alike—which show that Spellman would be more limited in social functioning than the RFC would allow. To be sure, an ALJ is not required to give substantial weight to any opinion, but the rejection of all the mental health opinion evidence leaves the Court to question how the ALJ could have formulated the RFC, especially where, as here, the discredited opinion evidence was largely consistent. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (holding that an ALJ "is not free to set his own expertise against that of a physician who" submitted an opinion before him); *Hazlewood v. Comm'r of Soc. Sec.*, No. 6:12-CV-798, 2013 WL 4039419, at *5 (N.D.N.Y. Aug. 6, 2013) ("[A]lthough the RFC determination is reserved for the commissioner,

the RFC assessment is still a medical determination that must be based on medical evidence of record, and the ALJ may not substitute his own judgment for competent medical opinion.").

The ALJ's rejection of Dr. Desir's opinion was harmful because it could have changed the outcome of the case. At the hearing, the vocational expert testified that, if Dr. Desir's opinion was adopted as the RFC, there would be no jobs in the national economy that Spellman could perform. Tr. 54-57. It is obvious that the ALJ wanted to get a particular result and tailored his opinion in an attempt to reach that result. Consequently, remand is required.

## CONCLUSION

Spellman's motion for judgment on the pleadings (ECF No. 7) is GRANTED, the Commissioner's motion for judgment on the pleadings (ECF No. 15) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings. The Clerk of Court will enter judgment and close this case.

IT IS SO ORDERED.

Dated: January 24, 2020
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court